UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

DIAMONDS PAINTING, INC.,
d/b/a PETSLIFY,

                              Plaintiff,

        -against-

CC BRAND HOLDINGS, LLC,
d/b/a CUDDLE CLONES,

                              Defendant.

Case No. 1:26-cv-3900

 **COMPLAINT**

**AND DEMAND FOR**

**JURY TRIAL**

Plaintiff Diamonds Painting, Inc. d/b/a Petslify ("Petslify"), by and through its attorneys

Falcon Rappaport & Berkman LLP, states the following for its Complaint:

**PRELIMINARY STATEMENT**

1.      In January 2026, Cuddle Clones sued Petslify for false advertising in this Court,

*CC Brand Holdings, LLC v. Diamonds Painting, Inc.*, Case No. 1:26-cv-49. The parties resolved

that action, and it was dismissed. From that point through the present, Cuddle Clones has engaged

in the exact same deceptive conduct it accused Petslify of: concealing that its products are

manufactured in China while telling consumers it is "based right here in the USA," advertising a

"100% Money-Back Guarantee" riddled with undisclosed conditions including a "free alteration"

option that permanently voids all refund rights, running perpetual fictitious "sales," and claiming

"100,000+ 5-Star Reviews" when the verified count is approximately 5,300.

2.      Cuddle Clones falsely advertises its products willfully and with full knowledge of

its violation of federal and state law. Cuddle Clones' own lawyers articulated the precise FTC

standards governing country-of-origin disclosures and money-back guarantees when they pressed those same standards against Petslify leading up to the prior litigation. Cuddle Clones now violates every one of them.

3.     Both Petslify and Cuddle Clones compete in a market that primarily serves consumers who have recently lost a beloved pet, a particularly vulnerable population. Cuddle Clones targets these grieving consumers with emotionally charged advertising ("Honor your pet's memory"; "Keep them close forever") and directs them to purchase products based on the false representations described in this Complaint. The FTC has recognized that marketing to emotionally vulnerable consumers raises heightened compliance concerns, as such consumers are less likely to exercise careful deliberation before purchasing.

4.     The false advertising continues daily. Every day that Cuddle Clones' deceptive advertising remains in the marketplace, Petslify loses sales to a competitor whose market position is built on lies. These losses cannot be recaptured. Cuddle Clones' conduct causes ongoing, irreparable harm to Petslify's business, goodwill, and competitive position, harm that will continue and accelerate absent immediate injunctive relief.

5.     Petslify brings this action for false advertising, deceptive business practices, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and New York General Business Law §§ 349 and 350. Petslify seeks a temporary restraining order, preliminary injunction, and permanent injunction requiring Cuddle Clones to immediately cease its false advertising and remove all deceptive materials from the marketplace, as well as damages, disgorgement of profits, and attorneys' fees.

6.     Cuddle Clones is a dominant participant in the custom pet plush industry, commanding approximately 48% of Google impression share and spending approximately

$800,000 per month on digital advertising across Meta, Google, TikTok, AppLovin, Snapchat, and Pinterest. Petslify is a smaller competitor, holding approximately 12% impression share in the same market. The market dominance that Cuddle Clones has achieved through deceptive advertising practices compounds the competitive injury Petslify suffers every day while the false advertising continues.

7.      Petslify's claims in this action arise from Cuddle Clones' own conduct in the marketplace and from Cuddle Clones' independent obligations under federal and state law.

## THE PARTIES

9.      Plaintiff Diamonds Painting, Inc. d/b/a Petslify ("Petslify") is a corporation organized under the laws of the State of Wyoming. Petslify operates the commercial website petslify.com and markets, sells, and ships custom pet plush products to consumers throughout the United States. Petslify is the owner of U.S. Trademark Registration No. 7,355,324 for the mark PETSLIFY, which was registered on the Principal Register on April 9, 2024, in International Classes 28 and 40.

10.     Defendant CC Brand Holdings, LLC d/b/a Cuddle Clones ("Cuddle Clones") is a limited liability company organized under the laws of the State of Delaware, and its stated principal place of business at 540 S. Main Street, Suite 122, Akron, Ohio 44311. Cuddle Clones operates the commercial website cuddleclones.com and markets, sells, and ships custom pet plush products to consumers throughout the United States, including within the Eastern District of New York.

## JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1125.

3

12.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

13.     This Court has personal jurisdiction over Defendant CC Brand Holdings, LLC because Cuddle Clones regularly conducts business within the State of New York, directs its commercial website and advertising to consumers in New York, ships products to customers in New York, and previously submitted to the jurisdiction of this Court in Case No. 1:26-cv-49 when it filed the original action in this district.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, including the dissemination of Defendant's false advertising to consumers in this district, and because Defendant previously consented to venue in this district by initiating Case No. 1:26-cv-49 here.

**THE PRIOR LITIGATION**

15.     On January 5, 2026, Cuddle Clones filed a complaint against Petslify in this Court, Case No. 1:26-cv-49, alleging three causes of action: (1) false advertising under 15 U.S.C. § 1125(a)(1)(B); (2) false advertising under N.Y. Gen. Bus. Law § 350; and (3) deceptive acts and practices under N.Y. Gen. Bus. Law § 349. Cuddle Clones simultaneously moved for a preliminary injunction.

16.     The parties subsequently resolved the action, and it was dismissed.

17.     Petslify's claims in this action arise from Cuddle Clones' own conduct in the marketplace and from Cuddle Clones' independent obligations under federal and state law, and are not related to, or arising out of, the prior action.

## CUDDLE CLONES' FALSE AND DECEPTIVE CONDUCT

### A. False Country-of-Origin Representations

18.     Cuddle Clones manufactures its custom pet plush products in China. Cuddle Clones is a 100% foreign-owned investor of a manufacturing entity in Dongguan, China, as confirmed by Chinese corporate registry records.

19.     On September 29, 2025, Cuddle Clones founder Jennifer Williams publicly stated, on a podcast, that Cuddle Clones manufactures its products in China.

20.     Despite manufacturing in China, Cuddle Clones' product pages prominently display an Akron, Ohio business address with no country-of-origin disclosure on any product page. Cuddle Clones' Shipping FAQ reinforces this omission: under the heading "Do you Ship to Countries Other than the United States," Cuddle Clones states "We sure do!" and that "duties may be charged when shipping internationally," implying that shipments to the United States are domestic when, in fact, every Cuddle Clones product shipped to a U.S. customer originates from China.

21.     Cuddle Clones further represents on its website that its products are "made by real artists, not mass-produced in an anonymous factory." Cuddle Clones' FAQ page affirmatively states: "Feel confident knowing we have been in business more than 10 years, based right here in the USA with elite customer service." These statements directly represent domestic operations to consumers at the point of purchase.

22.     In addition, Cuddle Clones displays a "The Cuddle Clones Difference" comparison table on its plush and pajamas product pages, assigning "X" to all "Other Brands" across seven attributes, including "100% Money-Back Guarantee," "Priority Creation Available," "Elite Human Customer Support," and "Proud American Company." At minimum, four of these "X" marks are

confirmed literally false, as Petslify and other competitors demonstrably offer money-back guarantees, priority creation, human customer support, and are U.S.-incorporated companies.

23. The net impression created by these elements, including a prominent domestic business address, an affirmative claim of being "based right here in the USA," artisanal language, "Proud American Company" as a competitive differentiator, and no origin disclosure, is that the products are artisanal products made in the United States. This impression is literally false or, at minimum, materially misleading.

24. These false origin representations violate 16 C.F.R. Part 323, which governs "Made in USA" and country-of-origin claims in advertising.

**B. Deceptive "100% Money-Back Guarantee"**

25. Cuddle Clones prominently advertises a "100% Money-Back Guarantee" on its product pages, in paid advertisements, and in email marketing campaigns.

26. Despite this representation, Cuddle Clones imposes at least six material conditions on refund eligibility that are not disclosed at the point of sale or on the product pages where the guarantee is advertised. These undisclosed conditions include, but are not limited to: (a) a requirement that customers request a full refund before production begins for a true 100% refund, with no disclosure of when production begins; (b) the exclusion of shipping, duties, and taxes from any refund; (c) a requirement that the customer pay return-shipping costs; (d) exclusion of supposed "design fee" components; (e) that accepting Cuddle Clones' offered "free alteration" permanently and irrevocably voids all refund rights; and (f) a requirement that the customer first undertake and complete a "revision" process before any refund is considered. Additional standard return conditions, such as a 30-day return window and an original-packaging requirement, are never clearly disclosed at the point of sale.

27.     Most egregiously, Cuddle Clones funnels consumers into forfeiting the guarantee altogether through what is, in effect, an "alteration trap." Cuddle Clones' FAQ page promotes its alteration process as a consumer benefit, under the headline "We want you to love your Cuddle Clone... we offer a free alteration to perfect every detail!", and lists affirmative reasons to "Choose the Alteration Process," including "Preserve Cherished Memories" and "Preserve Emotional Significance," language specifically calibrated for grieving pet owners. Nowhere on that FAQ page does Cuddle Clones disclose that accepting a "free alteration" permanently and irrevocably voids all refund rights. A consumer who elects the alteration option in the reasonable belief that it is a parallel form of protection to the advertised "100% Money-Back Guarantee" in fact forfeits that guarantee entirely.

28.     Multiple consumer complaints on Trustpilot and with the Better Business Bureau document Cuddle Clones' systematic denial of refunds despite its "100% Money-Back Guarantee" representations. On June 12, 2025, the Better Business Bureau formally contacted Cuddle Clones regarding "multiple advertising concerns on its website," noting that "[a] majority of the unresolved customer complaints were related to these guarantees."

29.     The guarantee's other undisclosed conditions compound the deception. A consumer induced to purchase by an unqualified "100% Money-Back Guarantee" has no way of knowing, at the point of sale, that before any refund will even be considered the consumer must first submit to a "revision" process, bear return-shipping costs, and forfeit any amounts paid for shipping, duties, and taxes. These undisclosed conditions defeat the "100% Money-Back Guarantee" promise the headline conveys, a tactic especially exploitative of the bereaved pet owners to whom Cuddle Clones markets.

30.     During the prior litigation, Cuddle Clones' own counsel stated to Petslify's counsel: "The guidelines are explicit: advertising a 100% satisfaction or money-back guarantee is misleading if return shipping costs are hidden in the fine print."

31.     Cuddle Clones' own counsel thus articulated the precise FTC standard that Cuddle Clones itself violates by advertising a "100% Money-Back Guarantee" while imposing undisclosed return shipping costs and other material conditions.

32.     This conduct violates 16 C.F.R. Part 239, which provides that guarantees must be accompanied by a "clear and conspicuous disclosure of the terms, conditions, and limitations of the guarantee."

### C. Fictitious Pricing and Manufactured Urgency

33.     Cuddle Clones employs a perpetual "sale" pricing scheme in which its "Original Plush Cuddle Clone" is advertised with strikethrough prices that vary by page, reaching as high as $359.99, alongside purported sale prices that fluctuate between $199.99 and $249.99. Historical screenshots from February 2024 through the present show this identical pricing pattern across months and years, demonstrating that the "original" price is fictitious; the product is never actually sold at that price.

34.     Cuddle Clones also employs countdown timers and urgency language that is materially false, with emailed promotional codes working well past their marketed expiration date and consistently resetting back to the purported sale price.

### D. Inflated Review Counts and Undisclosed Paid Endorsements

35.     Cuddle Clones displays inconsistent and grossly inflated review counts across its website and marketing materials. Various pages have cited "8,000+ 5-Star Reviews," "9,000+ 5 Star Reviews," and "4,000+ 5 Star Reviews." In paid Google Search advertising, Cuddle Clones

has claimed "100,000+ 5 Star Reviews," many times the figures cited elsewhere, while the actual verified count appears to be approximately 5,300.

36. The inflation of the website review counts by nearly 100%, and of the Google Search figure by approximately twenty times, constitutes a materially misleading representation that overstates the breadth of positive consumer experience and is designed to influence purchasing decisions.

37. Cuddle Clones also disseminates paid advertisements that feature purportedly independent customer reviews and testimonials in user-generated-content style. On information and belief, these videos are created by individuals who were compensated by Cuddle Clones to produce them, yet the advertisements do not disclose that the endorsers were paid. Nothing in these advertisements discloses the material connection between Cuddle Clones and the ostensibly independent reviewers, leaving consumers to understand that the endorsements reflect the unpaid, independent experiences of ordinary customers.

**E. Heightened FTC Compliance Obligations**

38. Both Petslify and Cuddle Clones operate in a market that primarily serves consumers who have recently lost a pet, a particularly vulnerable consumer population. Cuddle Clones specifically targets these consumers through paid advertising that uses emotional triggers such as "Honor your pet's memory" and "Keep them close forever." These advertisements direct bereaved consumers to purchase products based on the false representations described above, including the false guarantee, fictitious pricing, and undisclosed Chinese manufacturing.

39. The FTC has recognized that marketing to emotionally vulnerable consumers raises heightened compliance concerns under Section 5 of the FTC Act, as such consumers are less likely to exercise the careful deliberation that the "reasonable consumer" standard presumes. The false

representations described herein are therefore subject to heightened scrutiny, and their deceptive impact on this vulnerable population is correspondingly greater.

### F. Willfulness of Defendant's Conduct

40.     Defendant's conduct is willful. Cuddle Clones had actual knowledge that the practices described in this Complaint violate federal and state law through at least three independent channels: (a) its own counsel's prosecution of Petslify for alleged similar practices in Case No. 1:26-cv-49; (b) its own April 21, 2025 cease-and-desist letter citing 16 C.F.R. Part 323; and (c) the Better Business Bureau's June 12, 2025 contact regarding its advertising practices. That willfulness is reinforced by Cuddle Clones' use of the same deceptive messaging across multiple platforms, including perpetual "Limited Time" campaigns and "This Weekend Only" flash-sale codes that Cuddle Clones runs on Meta, Google, and TikTok. Extending the same false-urgency advertising to new platforms after repeated notice that the practices are unlawful is itself probative of bad faith.

### EVIDENCE OF ONGOING VIOLATIONS

41.     Beginning March 19, 2026, and continuing through the present, Petslify has conducted ongoing comprehensive reviews of Cuddle Clones' website, checkout flow, advertising, and email campaigns.

42.     These reviews documented dozens of confirmed findings of false, misleading, or deceptive advertising across eight categories: (1) fictitious pricing and point-of-sale manipulation; (2) manufactured urgency and false scarcity; (3) coordinated false advertising on paid platforms; (4) the illusory "100% Money-Back Guarantee"; (5) competitor disparagement and false superiority; (6) review suppression and rating fabrication; (7) FTC unfairness in exploiting bereaved consumers; and (8) statutory, privacy, and compliance failures.

43.     The evidence library supporting these findings includes screen recordings, advertisements across Meta, Google, and TikTok, and static exhibits, all time-stamped and documenting violations that continue through the present.

## BASIS FOR INJUNCTIVE RELIEF

44.     Petslify is entitled to a temporary restraining order, preliminary injunction, and permanent injunction under Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116(a), which authorizes injunctive relief to prevent violations of the Lanham Act.

### A. Likelihood of Success on the Merits

45.     Petslify is likely to succeed on the merits of its Lanham Act and New York state law claims. As set forth in detail above, Defendant has made and continues to make false and misleading statements in commercial advertising regarding: (a) the geographic origin of its products; (b) its "100% Money-Back Guarantee"; (c) its pricing; and (d) its customer reviews. These statements are literally false or, at minimum, misleading to consumers.

46.     Defendant's own counsel articulated the precise legal standards governing these advertising practices when prosecuting Petslify for alleged similar conduct. Defendant cannot credibly dispute that it knows its current practices violate those same standards.

### B. Irreparable Harm

47.     Petslify will suffer irreparable harm absent injunctive relief. Defendant's false advertising causes ongoing, daily injury to Petslify through: (a) diversion of customers who are deceived into purchasing from Defendant based on false representations; (b) erosion of Petslify's market share and competitive position; (c) damage to Petslify's goodwill and business reputation; and (d) the incalculable harm of competing against a rival whose market dominance is built on its deception of its very own vulnerable consumers.

11

48.    By contrast, Petslify faces substantial ongoing harm from Defendant's unlawful conduct. Petslify has already reformed its own advertising practices while Defendant continues to benefit from the very deceptive practices it accused Petslify of. Defendant's false advertising is ongoing and pervasive, spanning Defendant's website, paid advertising, email campaigns, and social media.

49.    These harms are irreparable because they cannot be adequately compensated by monetary damages. Lost customers may never return. Damage to goodwill and reputation cannot be precisely quantified. And every day that Defendant's false advertising continues, Defendant gains market share and brand recognition through unlawful means, advantages that compound over time and cannot be undone after the fact.

### C. Balance of Hardships

50.    The balance of hardships tips decidedly in Petslify's favor. Petslify seeks only to require Defendant to comply with the law, the same law Defendant itself invoked when suing Petslify. Defendant will suffer no cognizable hardship from being required to advertise truthfully. Any burden on Defendant from correcting its advertising is self-inflicted and does not weigh against injunctive relief.

### D. Public Interest

51.    The public interest strongly favors injunctive relief. The Lanham Act and New York General Business Law exist to protect consumers from false and misleading advertising. Defendant's deceptive practices harm not only Petslify but also the consuming public, particularly the vulnerable, grieving pet owners who are the primary targets of Defendant's marketing.

52.    Enjoining Defendant's false advertising will protect consumers from being deceived into purchasing products based on misrepresentations about origin, guarantees, pricing,

and reviews. There is no public interest in permitting a dominant market participant to build its competitive position through unlawful conduct.

## COUNT I

### False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

53.     Petslify restates all prior paragraphs as if fully restated herein.

54.     Defendant has made and continues to make false and misleading statements of fact in commercial advertising and promotion regarding the nature, characteristics, qualities, and geographic origin of Defendant's goods and services, in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

55.     Defendant's false and misleading statements include, but are not limited to: (a) the prominent display of domestic business addresses on product pages with no country-of-origin disclosure while products are manufactured in China; (b) representations that consumers should "[f]eel confident knowing we have been in business more than 10 years, based right here in the USA" and that products are "made by real artists, not mass-produced in an anonymous factory" when they are manufactured in a Chinese factory; (c) the use of "Proud American Company" as a competitive differentiator in comparison tables; (d) representations of a "100% Money-Back Guarantee" that is subject to many undisclosed material conditions, including an "alteration trap" that permanently voids refund rights; (e) fictitious strikethrough pricing suggesting discounts from prices at which the products are never sold; (f) inflated review counts; and (g) paid advertisements presenting compensated endorsers as independent customers without disclosing the material connection.

56.    Defendant's false and misleading statements were made in commercial advertising and promotion, including on the cuddleclones.com website, in Meta and Google paid advertisements, in email marketing campaigns, and on social media platforms.

57.    Defendant's false and misleading statements are material to consumers' purchasing decisions.

58.    Defendant's false and misleading statements were disseminated in interstate commerce.

59.    Petslify has been and continues to be damaged by Defendant's false advertising through, among other things, diverted sales, lost revenue, damage to goodwill, and the cost of corrective advertising. Petslify has no adequate remedy at law.

60.    Defendant's conduct is willful, as set forth above. Petslify is entitled to enhanced damages, disgorgement of Defendant's profits, and an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT II

### False Advertising Under N.Y. Gen. Bus. Law § 350

61.    Petslify restates all prior paragraphs as if fully restated herein.

62.    Defendant has engaged in false advertising in the conduct of business, trade, or commerce in the State of New York, in violation of N.Y. Gen. Bus. Law § 350.

63.    Defendant's false advertising, as described above, is consumer-oriented, directed at consumers at large through public-facing websites, paid digital advertisements, email campaigns, and social media.

64.    Defendant's false advertising is misleading in a material respect and is likely to mislead a reasonable consumer acting reasonably under the circumstances.

65.    Petslify has been injured as a result of Defendant's false advertising. Petslify has no adequate remedy at law.

## COUNT III
### Deceptive Acts and Practices Under N.Y. Gen. Bus. Law § 349

66.    Petslify restates all prior paragraphs as if fully restated herein.

67.    Defendant has engaged in deceptive acts and practices in the conduct of business, trade, or commerce in the State of New York, in violation of N.Y. Gen. Bus. Law § 349.

68.    Defendant's deceptive acts and practices include, but are not limited to: (a) concealing the country of origin of its products while displaying domestic addresses and affirmatively claiming to be "based right here in the USA"; (b) advertising a "100% Money-Back Guarantee" with undisclosed material conditions, including an "alteration trap" that permanently voids refund rights; (c) employing fictitious strikethrough pricing; (d) inflating review counts; (e) using countdown timers and urgency language to create a false sense of scarcity; (f) presenting paid endorsers as independent customers without disclosure; and (g) directing advertising premised on the false representations described herein to bereaved pet owners.

69.    Defendant's deceptive acts and practices are consumer-oriented, directed at the public at large.

70.    Defendant's deceptive acts and practices are material and likely to mislead a reasonable consumer acting reasonably under the circumstances.

71.    Petslify has been injured as a result of Defendant's deceptive acts and practices. Petslify has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Petslify respectfully requests that this Court enter judgment against Defendant and grant the following relief:

15

A. A temporary restraining order, to be issued on shortened notice pursuant to Fed. R. Civ. P. 65(b), immediately enjoining Defendant, its officers, agents, employees, and all persons acting in concert with them, from:

(i) Making false or misleading representations regarding the geographic origin of its products, including by displaying domestic business addresses on product pages without conspicuous country-of-origin disclosure;

(ii) Advertising a "100% Money-Back Guarantee" or any similar guarantee without conspicuous disclosure of all material terms and conditions at each point of sale where the guarantee is advertised;

(iii) Using fictitious strikethrough pricing or any other pricing representations that suggest discounts from prices at which products are not actually sold;

(iv) Inflating, misrepresenting, or otherwise falsely stating the number or nature of customer reviews;

(v) Disseminating paid endorsements or testimonials without clear and conspicuous disclosure of the material connection between the endorser and Cuddle Clones; and

(vi) Engaging in any other false, misleading, or deceptive advertising in connection with the marketing, promotion, or sale of custom pet plush products;

B. A preliminary injunction, following a hearing on notice to Defendant, continuing the relief described in paragraph A above pending final resolution of this action;

C. A permanent injunction, following trial or other final adjudication on the merits, permanently enjoining Defendant from the conduct described in paragraph A above and requiring Defendant to remove or correct all false or misleading advertising identified herein within ten (10) days of the Court's final order;

16

D. An order requiring Defendant to file with the Court and serve upon Petslify, within thirty (30) days of the entry of any injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

E. An accounting and disgorgement of Defendant's profits attributable to the false advertising, pursuant to 15 U.S.C. § 1117(a), which upon information and belief, is in excess of $4 million.

F. Corrective advertising injunction and damages to compensate Plaintiff for the cost of countering misleading or harmful messages propagated by the Defendant pursuant to 15 U.S.C. § 1125(a), 15 U.S.C. § 1116(a), and 15 U.S.C. § 1117(a);

G. Compensatory damages in an amount to be determined at trial;

H. Treble damages pursuant to 15 U.S.C. § 1117(a);

I. Statutory damages pursuant to N.Y. Gen. Bus. Law §§ 349 and 350;

J. An award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law §§ 349 and 350;

K. Pre-judgment and post-judgment interest; and

L. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes asserted in its Complaint.

Respectfully submitted,

**FALCON RAPPAPORT & BERKMAN LLP**

Dated: June 25, 2026

By:    */s/Moish E. Peltz*
_____

Moish E. Peltz

17

Christopher D. Warren
Simon B. Uritsky
Falcon Rappaport & Berkman LLP
1185 Avenue of the Americas, Suite 1415
New York, NY 10036
T: (212) 203-3255
mpeltz@frblaw.com
Attorneys for Plaintiff Diamonds Painting, Inc. d/b/a Petslify

18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIAMONDS PAINTING, INC. d/b/a PETSLIFY, <br><br> Plaintiff, <br><br> -against- <br><br> CC BRAND HOLDINGS, LLC d/b/a CUDDLE CLONES, <br><br> Defendant. | Case No. 1:26-cv-3900 <br><br> **VERIFICATION** |

**VERIFICATION**

I, Niko Dulzhikov, declare as follows, pursuant to 28 U.S.C. § 1746:

I am a co-founder and CEO of Plaintiff Diamonds Painting, Inc. d/b/a Petslify, the plaintiff in this action, and I am authorized to make this verification on its behalf.

I have read the foregoing Verified Complaint and know its contents. The factual allegations set forth therein are true and correct to the best of my knowledge, except as to those matters alleged upon information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____June 26_____, 2026, at _____2:09 PM ET_____.

_____
**Niko Dulzhikov**

1